## Rudy's Appeal.

1. Where land is sold at sheriff's sale only those creditors whose claims were liens on the land at the time of the sale, and the owner of the land, can participate in the distribution of the proceeds.

2. Land of H. was sold as the property of K., who was the vendor of H. The proceeds were awarded to a judgment-creditor of H. and the balance to H. as owner. R., a judgment-creditor of K., whose judgment had not been revived, as against H., claimed the fund on the ground that H. had made a prior promise to K. to pay R.'s judgment, and that he had by a parol contract with K. assumed the debt and promised to pay it. *Held*, that R. had no standing to participate in the distribution.

May 6th 1880. Before MERCUR, GORDON, PAXSON, TRUNKEY and STERRETT, JJ. SHARSWOOD, C. J., and GREEN, J., absent.

Appeal from the Court of Common Pleas of *Lancaster county:* Of May Term 1880, No. 69.

Appeal of Benjamin L. Rudy, executor of John Rudy, a judgment creditor of Michael Kauffman, from the decree of the court distributing the proceeds of the sheriff's sale of certain land, sold as the real estate of said Kauffman.

The land was sold under two writs issued from the Court of Common Pleas: Benjamin Rudy, executor of John Rudy, deceased, *v.* Michael Kauffman, April Term 1879, No. 42, and Benjamin Rudy *v.* Michael Kauffman, April Term 1879, No. 43.

Wm. Aug. Atlee, Esq., was appointed auditor to report distribution. He found the facts as follows:

The land sold by the sheriff, under these writs, was two acres of land in Lancaster county, the title to which, before the 1st of April 1877, was in Michael Kauffman. On November 10th 1876, Michael Kauffman and Charles F. Hearing entered into articles of agreement, wherein Kauffman agreed to convey the land to Hearing on April 1st 1877, for the sum of $1250; on April 2d 1877, Hearing paid Kauffman $300, and Kauffman signed but did not deliver the deed; in the latter end of June 1877, Hearing paid $50 more to Kauffman, and the deed was duly delivered. This deed was never recorded, but John Rudy and Benjamin Rudy both knew of the sale. Hearing went into possession of the land in January 1877.

At the time of the delivery of the deed the land was subject to the lien of two judgments, one John Rudy *v.* Michael Kauffman, of January Term 1873, No. 1257, for $800, and one Benjamin Rudy *v.* Michael Kauffman, of January Term 1874, No. 1536, for $100. These sums, with the $350 paid in cash, make up the sum of the purchase-money, $1250, and it was agreed between Kauffman and Hearing that Benjamin Rudy was to get the balance; this was their agreement, as Kauffman testifies; Hearing testifies that his bargain with Kauffman was that he was to pay the $900

judgments to Rudy; tne testimony all shows that the land was bought subject to these judgments. Some time after the delivery of the deed it was handed by Hearing to A. B. Hackman, Esq., for some purpose, which some of the witnesses call a surrender, but the land was never reconveyed, and the title remained in Hearing until the sale by the sheriff.

On April 6th 1878, John Rudy revived to January Term 1878, No. 1626, by amicable scire facias, the judgment of January Term 1873, No. 1257, for $800, against Michael Kauffman alone, Charles T. Hearing's name not being mentioned in the scire facias or signed to it; and on February 17th 1879, Benjamin Rudy sued out to March Term 1879, No. 18, against Michael Kauffman, defendant, with notice to Charles F. Hearing, a scire facias to revive the judgment of January Term 1874, No. 1536, on which judgment was subsequently obtained.

The $300 paid by Hearing to Kauffman on April 2d 1877, was borrowed by him from Isaac L. Landis, to whom he gave a bond with warrant dated that day. On this bond judgment was entered by Mr. Landis, December 24th 1878, to. November Term 1878, No. 215.

John Rudy died and Benjamin Rudy became the executor of his will before the date of the sale.

·The real estate was sold on March 8th 1879, to Benjamin Rudy, on executions issued on the judgments of January Term 1878, No. 1626, and January Term 1874, No. 1536, and the net proceeds amount to $569.70. Benjamin Rudy, claiming to be the first lien creditor to an amount sufficient to cover this, presented his receipt for the money to the sheriff, under the Act of 1846, but his right to the money was questioned by Isaac L. Landis, an interested party.

The auditor then reported " that the judgment of January Term 1878, No. 1626, was not a lien on the land at the time of the sale, as it was revived, after the defendant had sold the land, against the defendant alone, without notice to the terre-tenant: Armstrong's Appeal, 5 W. & S. 352. The judgment of January Term 1874, No. 1536, was still a lien when execution was issued and the land sold, and must be first paid."

"Objection was made to the payment of the judgment of Isaac L. Landis *v.* Charles F. Hearing, of November Term 1878, No. 215; the position being taken that a sale of real estate on an' execution against a former owner does not divest the liens against the terre-tenant, and that, therefore, his lien creditors cannot participate in the fund. The auditor decides that a judicial sale divests all estates acquired and all liens entered after the entry of the lien on which the sale is founded; that the money then represents the land, and is distributable among the respective successive owners and their lien creditors in their regular order. The sale on the

writ Ex. Doc., April Term 1879, No. 43, conveyed this land, discharged from the estate and title of Charles F. Hearing, and from all liens against him, as well as from those against Michael Kauffman, and the judgment of Isaac L. Landis is entitled to be paid out of the proceeds.

"But a question more difficult of solution remains. After payment of the judgments of Benjamin Rudy and Isaac L. Landis, a balance is left. To whom is this balance to go? To Charles F. Hearing, as owner of the real estate sold, or to Benjamin Rudy, as executor of John Rudy, deceased, who claims under judgment of the January Term 1873, No. 1257, revived to January Term 1878, No. 1626?

"When Hearing received his deed he took the property, 'subject to the $900,' as Mr. Landis testifies Hearing told him; Kauffman testifies that Hearing paid only $350 of the purchase-money, Benjamin Rudy was to get the balance; that this was the agreement between him and Hearing; Hearing testifies, 'My bargain with Kauffman was, that I was to pay the $900 judgments to Rudy.' The judgment last above referred to is one of these judgments. While there can be no doubt that this is a parol agreement, which cannot, therefore, affect subsequent judgment creditors, does it not affect Hearing's right to claim this balance? If he had made no agreement in regard to paying this money or taking the land subject to it, if the transaction was only such as the records, articles of agreement and deed show, he would undoubtedly be entitled to it. But does not this evidence materially affect his right? It undoubtedly gives John Rudy's executor a right of action against him, and, in the auditor's opinion, gives him a right to interpose here and claim this balance of the money made out of the land specifically devoted by Hearing to the payment of the debt; it is an equitable lien good between the parties. If the deed had contained a clause subjecting the land to the payment of this sum, then Hearing and all others would be precluded from participating in the proceeds of the sale until it was paid; Hearing, having by contemporaneous parol agreement for sufficient consideration, as he only paid the balance, agreed to pay it, and having made the land, so far as he was concerned, subject to the debt, and, therefore, the particular fund out of which it was to be paid, is he not precluded from participating in the fund until it is paid? Is he not estopped from claiming any of the proceeds of this land until all the debts to which he made it liable are paid? This judgment was duly kept alive against Kauffman; Hearing had agreed that the land should be subject to it, and the auditor decides that he cannot come upon this fund until the judgment is paid, and that the balance must be awarded to Benjamin Rudy, executor of John Rudy, deceased."

Rudy excepted, on the ground that the auditor erred in paying

the Landis judgment in preference to his $800 judgment, and Hearing excepted because the auditor awarded the balance to said $800 judgment, instead of to him as owner.

The court, Livingston, P. J., delivered the following opinion:

"There can, we think, as the case was presented, be no doubt of the correctness of the report of the auditor, so far as it relates to the awarding to Benjamin Rudy the principal and interest due on his judgment to January Term 1874, No. 1536, $129.17, and to Isaac L. Landis, on his judgment to November Term 1878, No. 215, the principal and interest due thereon, $324.36, but we think that, although the learned auditor has presented the matter in the strongest possible light, he has *erred* in awarding the balance remaining after the payment of those judgments to Benjamin Rudy, executor of John Rudy, deceased, to wit, $77.17.

"He has decided and reported, and, in our judgment, very properly too, that Rudy's executor had no right by lien in law to claim priority over the judgment of Landis as to this fund. He should have gone farther, and decided and reported that Rudy's executor could have no claim as a lien-creditor on the money for distribution. The judgment which he held was at one time a lien on the land sold by Kauffman to Hearing, but he had revived it after the sale to Hearing against Kauffman alone, and did not include Hearing, the purchaser and terre-tenant; by this proceeding the judgment became a lien on the remaining land owned by Kauffman only, and the land sold to Hearing was entirely relieved therefrom.

"It does not appear that at the time the agreement between Kauffman and Hearing was written, anything was said or any agreement made with reference to the payment of the Rudy judgments. There is nothing stated in either agreement or deed with reference to these judgments. It is true, that when he came to pay for the property and get his deed, Hearing had not money enough, and he then agreed, after paying $350 of the purchase-money, to pay the Rudy judgments and upon this agreement or arrangement Kauffman delivered to him the deed. Hearing afterwards stated to Rudy, or his executor, that he had promised Mr. Kauffman to pay, and he would pay, the Rudy judgments, but this did not and could not revive the lien or continue the old lien, nor did it create a new lien, nor did it make Rudy's executor a lien-creditor, so as to enable or entitle him to participate in the funds for distribution. These judgments at the time of the sale to Hearing were a lien on all the real estate of Kauffman situate in Lancaster county, including that sold to Hearing.' But at the time of the sale of Hearing's real estate by the sheriff the judgment held by Rudy's executor was a lien on Kauffman's real estate only, and no lien or encumbrance on the property sold by the sheriff. The executor was not even a general creditor (viewed in

a legal point) of Hearing, whose property was sold. He had, as the learned auditor states, promised to pay to Rudy's executor this debt of Kauffman, but it may well be doubted whether this promise could, under the Statute of Frauds, have been enforced.

"There was no lien, therefore, held by either Kauffman or Rudy's executor against Hearing, or the real estate owned by him and sold as Kauffman's, at the time of the sale by the sheriff, and neither of them can, so far as the claim of Rudy's executor against Kauffman is concerned, participate in this distribution.

"The exceptions filed by counsel for Mr. Hearing are, therefore, sustained, and the report of the auditor reformed accordingly."

From this decree this appeal was taken.

*W. R. Wilson*, for appellant.—The auditor finds the fact, which none of the parties disputed, that Hearing bought the real estate on condition or under and subject to the payment of the two judgments held by Rudy; such was the distinct agreement of the parties. Having found the agreement of the parties, we ask, what is there in the law to prevent this contract from being carried out? The court below seems to think that the verbal agreement is obnoxious to the Statute of Frauds, because Hearing had promised to pay Kauffman's debt. The answer to this is, that Hearing promised to pay his own debt, because the Rudy judgments were part of the purchase-money of the property he bought and obtained.

The mere fact that the agreement was not made a part of the deed is not fatal as between these parties and others having notice of it.

It is true, Kauffman, and not Hearing, was sold out, but Landis can only claim through Hearing; that is, Landis's judgment is only a lien on Hearing's interest as acquired by his contract with Kauffman, and according to which Hearing was bound to pay the $900 Rudy judgment. Whether the $800 judgment had lost its lien as against Hearing is immaterial, because by the contract between the parties, Kauffman and Hearing, agreed to by Rudy, the holder of the bond, that judgment was considered as a charge on the land. Landis's judgment is a lien only on Hearing's interest in the land, and this interest can only be made available by selling out Hearing. If Landis is willing to become the purchaser of this interest, as sheriff's vendee on his own judgment, he may try the value of his title by bringing ejectment against Rudy, as the sheriff's vendee on his execution against Kauffman.

*M. Brosius* and *A. F. Hostetter*, for appellees.—Landis's judgment takes precedence of Rudy's: Ficke's Appeal, 21 P. F. Smith 447; Sames's Appeal, 2 Casey 184; Fursht *v.* Overdeer, 3 W. & S. 470; Armstrong's Appeal, 5 Id. 352; McCray *v.* Clark, 1

Norris 457. On the distribution of the proceeds of a sheriff's sale, only lien-creditors can participate : Smith v. Reiff, 8 Harris 564. Rudy's $800 judgment had ceased to be a lien before the date of the execution, and could not, therefore, participate.

The appellant's argument, that Hearing's agreement to take the land subject to the Rudy judgment creates an equitable lien, is without substance. Appellant has not brought up the deed from Kauffman to Hearing, but it is conceded that it contained no condition whatever concerning the purchase-money. It was an executed conveyance, subject of necessity to all subsisting liens, but containing no mention of the Rudy judgment. In such a case there is no lien for the unpaid purchase-money.

To create an estate upon condition of the payment of purchase-money, which would revert to the vendor on the breach of the condition, requires that such intention be expressed in apt words in the deed : Bortz v. Bortz, 12 Wright 382 ; Perry v. Scott, 1 P. F. Smith 119 ; Hiester v. Green, 12 Wright 96.

There is no equitable lien for purchase-money after the title has passed, unless it is in some manner expressly charged upon the land : Kauffelt v. Bower, 7 S. &. R. 64 ; Trinity Church v. Watson, 14 Wright 518 ; Strauss's Appeal, 13 Id. 353.

Mr. Justice Paxson, delivered the opinion of the court, June 19th 1880.

Whenever the real estate of a debtor is sold by the sheriff the proceeds must be distributed among the lien-creditors, and the surplus, if any remaining, must be paid to the debtor : Act of 16th June 1836, sect. 93, Pamph. L. 777. That is precisely what the court below did here. The appellant, however, is not satisfied with the decree, hence this appeal. The difficulty which the appellant has to meet is that the lien of his testator's judgment has expired. It was revived against the original defendant without joining the terre-tenant. After the lien was lost by this omission, Hearing, the terre-tenant, confessed a judgment in favor of Landis. The property was sold on a judgment against Kauffman, Hearing's vendor, and it was contended by appellant that because the real estate was sold as the property of Kauffman and not of Hearing, the proceeds must go to Kauffman's lien-creditors ; that is to say, to the appellant's judgment, the lien whereof had expired. We need not discuss this proposition. That there is nothing in it is settled by a host of authorities. I will only refer to Ficke's Appeal, 21 P. F. Smith 447.

It was said, however, that even if the lien of appellant's judgment had expired, he was entitled to the fund for the reason that Hearing had made a parol promise to Kauffman to pay this judgment, and that he kept back so much of the purchase-money. This would be wrenching the recent "under and subject"

cases out of all manner of shape. The most that can be said is, that Hearing may have made himself liable to an action on the part of the holder of the judgment. That such a promise could galvanize into life this dead lien so as to entitle it to claim the proceeds of a sheriff's sale is a proposition exceedingly difficult to sustain.

After paying the liens the court below awarded the balance of the fund to the owner of the land sold. This was in strict conformity to the Act of Assembly. But here again the appellant interposes and says: It is true I have lost my lien, but Hearing promised to pay my judgment, and he has that much of the purchase-money in his hands. The appellant seems to forget that a mere contract creditor has not even a right to be heard upon a question of distribution, nor can he take a writ of error. This is settled law: Smith *v.* Reiff, 8 Harris 364. The promise to pay the judgment was at most an agreement to indemnify the vendor; it was not a promise to pay out of the land, nor did the promise run with the land; it created no estate upon condition which would revert to the vendor upon breach of condition. To create such estate the intention must be expressed by apt words in the deed: Hiester *v.* Green, 12 Wright 96; Bortz *v.* Bortz, Id. 382; Perry *v.* Scott, 1 P. F. Smith 119. Nor is there any equitable lien for the purchase-money. After the legal title has passed the lien must be expressly charged upon the land: Kauffelt *v.* Bower, 7 S. & R. 64; Strauss's Appeal, 13 Wright 353; Trinity Church *v.* Watson, 14 Id. 518.

There is no room for estoppel. The appellant's testator parted with nothing and did nothing by reason of Hearing's promise to pay his judgment. If the money is lost, it will be by reason of his laches in not reviving his judgment so as to hold the terre-tenant.

The decree is affirmed; and the appeal dismissed at the cost of the appellant.