## O'Hare, Attorney, v. Marateck.

B. V. O'Hare and Felix O'Hare, for plaintiff.

L. R. Enterline, for defendant.

M. J. Ryan and Henry Arronson, for N. Piboavi.

KOCH, P. J., Jan. 6, 1930.—Upon the petition of Alfred I. Reese and A. Schwartz & Sons a rule was issued upon the plaintiff, the defendant, the sheriff and two other persons to show cause why the sheriff's sale of the defendant's stock of merchandise should not be declared void and of no effect, and why the said stock should not be delivered into the possession of, and title vested in, one of the petitioners, namely, Alfred I. Reese, receiver in bankruptcy of the said defendant, Marateck.

Marateck was engaged in the shoe business in Shenandoah, and, on July 12, 1929, confessed a judgment in favor of the plaintiff for $826.40. The judgment was entered Saturday, July 13, 1929, execution was issued the same day, and the entire stock of the defendant was levied upon by the sheriff, but the store was not closed by the sheriff, nor, the petitioners allege, were the sheriff's bills of sale to be seen there or elsewhere in the county. On Monday morning, July 22, 1929, at about 9 o'clock, the entire stock of merchandise was sold to the plaintiff for $50. Petitioners claim that the stock was worth $4200. The stock was all removed to Philadelphia two days after the sale by one Nathan Piboavi (or Piwovar), who, it is alleged, offered to sell the stock to one John Hirsch, an auctioneer in the City of Philadelphia, for the price of $4200. Reese, as receiver, made demand on Hirsch and Piboavi for delivery to him of the said stock. Petitioners also claim that no notice was given to creditors of any sale or intention to sell by O'Hare, and that the sale was in fraud and in violation of the rights of creditors and wholly illegal and void.

The rule was not obtained until Aug. 7, 1929.

It appears from the answers of O'Hare and Piboavi that O'Hare held the judgment as attorney for four different shoe companies, whose separate claims aggregated the amount of the judgment, namely, $826.40.

By Piboavi's answer it appears that he paid O'Hare $1354.60 for the said stock. He denies that he offered to sell it to Hirsch for $4200, and says that he added $2500 in value of other stock to that. In what purport to be depositions by O'Hare, he testified that he received only $1350 from Piboavi. O'Hare also deposed that the deputy sheriff who conducted the sale made public outcry thereof and that at least three others besides the sheriff's deputy and himself were present and that O'Hare's bid of $50 was the only bid.

By the sheriff's answer we find that public hand-bills of the sale had been put up and due public notice of the sale given. But we may say, in passing, that, although but six days' public notice is required under the law, we believe the general practice in this county has been to give a longer notice. It is not likely that the sale-bills were printed on Saturday, July 13th, and put up at once, and, as the sale took place on Monday, July 22nd, at the early hour of 9.30 A. M., we conclude that no time was lost in making the sale in this case. Two Sundays intervened between Saturday, July 13th, and Monday, July 22nd.

The sheriff admits in his answer that Marateck's place of business was not closed after he levied on the stock, and says it was left open because the plaintiff in the execution requested it. He also avers that the bills giving notice of the sale were placed upon the defendant's premises and at other places in Shenandoah.

This court has the power to inquire into the regularity and fairness of the sale of personal property when made by a sheriff under its writ, but it must be done at the instance of an interested party before the delivery of the goods: Placita 69 and 70, 2 Purd. 1551.

Now, it is not shown how the creditor, who petitioned for the rule, is interested in the proceeds of the sale. Had that firm also issued a writ of *fi. fa.* it would be so interested. But it does not even appear that it had reduced its claim to judgment. And as to Reese, who claims to be receiver under the proceedings in bankruptcy, it appears that he was not a party in interest before the sale, because he did not become the receiver until some days after O'Hare, the purchaser at the sheriff's sale, had sold and delivered the merchandise to Piboavi and Piboavi had taken it from Shenandoah to Philadelphia, well out of the jurisdiction of this court. The merchandise was moved well out of our jurisdiction two weeks before the pending rule was obtained.

518

Parties who have obtained *no judgments* are *not entitled* to share in a sheriff's distribution of the proceeds of a sale: Smith *v.* Reiff, 20 Pa. 364; Rudy's Appeal, 94 Pa. 338. True enough, these citations refer to sales of real estate, but the principle is the same. Nor is mere inadequacy of price a sufficient reason to set aside a sheriff's sale: Stroup *v.* Raymond, 183 Pa. 279; Snyder *v.* Snyder, 244 Pa. 331.

In order to set aside such a sale, the Act of April 10, 1849, P. L. 597, requires that "it appear that the sale shall have been so irregular or fraudulent as, in the opinion of the court, to have produced a sacrifice of the property to the prejudice of any such party," namely, a party interested.

The sheriff's return shows nothing irregular or fraudulent, and he is presumed to have complied with the law in all respects. Nor does the evidence persuade us that the plaintiff is guilty of any fraudulent intent or conduct. And without proof that the plaintiff or the sheriff is guilty of irregularity or fraudulent conduct, we do not feel that it lies within our power to set aside the sale. Besides, the act requires that the application to set aside such sale shall be made "before delivery of the goods." The rule is discharged.

From M. M. Burke, Shenandoah, Pa.